Case No. 22-1705, Lafayette Upshaw v. George Stephenson, Warden. Argument is not to exceed 15 minutes per side. Mr. Schultz, you may proceed for the appellant. Morning, there's a man pleads the court. Jared Schultz, Assistant Attorney General on behalf of the Warden. With your permission, I would like you need to speak up. Don't know how the technology works here, but I apologize. With your permission, I would like to reserve three minutes for rebuttal. Fine. As this court is well aware, the writ of habeas corpus is an extraordinary remedy designed only to correct extreme malfunctions in the state criminal justice system. It's not a tool for a federal court to substitute its own evaluations of the effect of potential alibi evidence, nor is it a tool for this court to correct minor missteps in the application of a framework designed to help uncover constitutional violation. So this court should reverse the district court's decision granting habeas relief for two reasons. First, the Michigan Court of Appeals made reasonable determinations and reasonably applied clearly established federal law when it determined that Mr. Upshaw failed to meet his burden to prove that counsel was ineffective, and the highly deferential guardrails of AEDPA have not been overcome. Second, whether AEDPA applies or not to the equal protection Batson claim, again, Mr. Upshaw has failed to meet his burden of proven purposeful discrimination here. How can it not be ineffective assistance of counsel to fail to investigate alibi witnesses? Well, Your Honor, the Michigan Court of Appeals denied this claim for two reasons, two alternative reasons. First, the Michigan Court of Appeals found that Mr. Upshaw hadn't even shown the substance of his alibi claim here because the offer of proof he gave was not an alibi under Michigan law. That was a reasonable determination. If you look at the alibi. If you could go into that a little bit because the alibi witnesses were going to say that he was at the house and not at the place where the attempted robbery occurred. Right, and Your Honor, I guess I'm stepping back from that a little bit and go into the actual statement that alibi witness provided the grandmother, Mr. Upshaw's grandmother. This was a letter. This was not an alibi. Nowhere in there did she say that she was willing to testify under oath. In fact, she never said in her statement in her letter that she was sworn to tell the truth at all. The statement was notarized, but nowhere in the notary did it say that this was sworn and subscribed to me. There's no title saying that this is an affidavit or this is a sworn statement. What is your legal authority for the claim that Upshaw's alibi witnesses had to precisely follow Michigan's affidavit statute? Well, that's that's a Michigan interpretation of Michigan law. That's not for a federal court to reconsider. The Michigan court here looked at the Michigan rule and said that the affidavit did not meet requirements of Michigan law. Whether they have to precisely follow the court rule or not is up to the Michigan courts to determine. That's not for the federal court to reconsider on habeas appeal. So again, I'm still puzzled at how whether the formalities of the statute were followed could make the letter any less a potential alibi, a potential source of investigation of an alibi. Well, it's a Michigan rule, Your Honor. Is it intended to apply in this context? Again, that's for the Michigan courts to determine whether it is or not, whether this court would find that it should apply in this context or not. That's not for this court to determine. That's the Michigan court. It's an interpretation of Michigan law. This court has to accept that. That all seems to be going to the question of whether in the end, there are three witnesses, but you're picking on the grandmother, whether this particular witness would ultimately qualify for an alibi. But the counsel didn't even investigate. This counsel did nothing, even though the petitioner sought the counsel to interview three family members who would say that he was at the house. Correct. But I guess where I'm at right now is there's no alibi evidence if you take the Michigan rule at that point. You don't really know. I mean, it doesn't start. The lawyer's duty to investigate does not start and end with whether the particular piece of information before him or her prior to investigation would be ultimately admissible in the Michigan courts. I mean, that's not the inquiry, I don't believe. Why do you think it is? I'm sorry. You're saying why do I think the inquiry is whether or not... It's whether a particular letter would have been admissible in a Michigan court. Why would that determine the lawyer's obligation to investigate? Sure, Your Honor. It's not whether that letter was admissible. It's whether he has sufficiently offered, sufficiently brought forth an offer of proof in the appellate court to show that what this alibi would have actually brought forth the evidence that he is now claiming to be brought forth. It's always his burden to prove the underlying factual predicate of his claim. If he can't prove the underlying factual predicate... The counsel is that this is IAC. This is ineffective assistance. So at issue is what was this attorney placed on notice of? Correct. And this letter placed him on notice of the duty to investigate the possibility of an alibi witness. And that's all we are looking to. The ultimate... If your rule is as you stated, then all an attorney has to do is say, oh, you told me that this might be part of your case, or you told me that you might have an alibi. But I think there's a technical reason that that's not accurate. So I'm not even going to investigate what you have told me as counsel. I don't see how that could ever function under the rubrics that govern ineffective assistance of counsel. Yes, Your Honor. The way you're saying it, I agree. I guess I'm maybe not putting forth my argument in the way I'm intending to. It's not that counsel saw this letter and saw a technical violation. It's that Mr. Upshaw on appeal has not even shown the underlying factual predicate of his claim. He has not shown that these were alibi witnesses that had anything to say because this was not an alibi... Or excuse me, not an affidavit under Michigan law. I'm sorry, Your Honor. You focused on the one alibi witness, but there were two others. What kind... Correct. ...includes those from being considered? Well, there's only really one other, and that was the aunt. The aunt didn't say anything. All she said in her statement, her letter to the court, was I could be an alibi witness to certain things that happened on the date, and I should have been called as a witness. She didn't say anything about the facts, what she could testify to, why she was an alibi witness. All she said was I was an alibi witness. That cannot be an offer of proof sufficient to prove the factual predicate of this claim because there's nothing to evaluate. Wasn't there another one as well? Well, there was a mother, but she didn't say anything about being an alibi witness. She was... And the problem with this whole claim is all these letters, I think, were designed to be sent to the Attorney Grievance Commission, and they eventually sent those letters, those same letters to the Michigan Court of Appeals. And then later on, Mr. Upshaw's attorney said, okay, well, we'll attach these letters to a motion to remand. But the mother did not say anything about being an alibi witness. She just generally complained about the counsel in a general fashion. So did Mr. Upshaw provide anything else, such as his own statement? Correct. He had asked his lawyer to investigate alibi witnesses and had given names to the lawyer. That's correct. And I will point out in his first affidavit, he did not say that he told his counsel about these witnesses. He did say that he had an alibi defense, but he said his counsel did not have all the information necessary to make an appropriate argument. You know, that can be interpreted, and I think a reasonable interpretation is he didn't tell his counsel about the alibi. And the Court of Appeals is entitled, surely entitled to rely on that when evaluating this claim in showing that he did not even provide the alibi names to the counsel sufficient to trigger his duty to investigate. Well, prejudice is one of the issues in this type of claim. And your statement, your briefing says that there was the trial record contained extremely damning evidence against Mr. Upshaw. What evidence are you talking about? So I understand, Your Honor, that there's been a lot of talk about the two pieces of evidence in this case. Alone, maybe it's not extremely damning, as I think I put it in my brief. Put together, it is a very strong case of Mr. Upshaw's guilt. What I am, I'm sorry, Your Honor. Particularly, that I see in the record is that the Tina woman identified him by eyewitness testimony. But that, we well understand, is not the strongest of evidence. There's clear questions about eyewitness testimony. So what else do you have? Well, here we also have the circumstances of Mr. Upshaw's arrest, where he was arrested just a few hours after the crime in question, committing a different crime with the shooter's accomplice. Well, help me understand how the fact that you caught somebody in a home robbery tells you that he was present in a gas station robbery at a different time. It's the same person that was there with the shooter. He's arrested with that same person who was at the robbery earlier that morning, just a few hours earlier. This robbery occurred around 3.30. He's arrested around 8 o'clock in the morning with that same person. And the eyewitness was extremely confident in her identification. And she knew nothing about the circumstances of Mr. Upshaw's arrest. She knew nothing about Mr. Upshaw having any connection to the shooter's accomplice. Yet she's still— I don't want to interrupt, but I want to do something on Bats. Yes.  So this is, again, Batson and his progeny have made clear that it is the criminal defendant's burden to prove purposeful discrimination here. Mr. Upshaw has not met that burden. He has not shown— With respect to two of the six jurors who were struck by the prosecutions who were black, was there ever any defense given by the prosecutor as to why the prosecutor struck those two black jurors? For two, there was not, but it was not for— So why isn't that alone enough under the three-part standard of Batson to say that there should be a new trial with a new jury? Because Johnson v. California makes clear that the prosecutor does not have to give any explanation. It can be a completely nonsensical explanation. It doesn't have to give any explanation at all. The second step only becomes relevant when you get to the third step, which places the burden on the criminal defendant to then explain why the prosecutor's reasons or non-reasons amount to a showing of purposeful discrimination. Wasn't the defendant's lawyer cut off in his explanation of why he thought that challenging and throwing off the jury six black people was a Batson violation by the trial judge and saying to the prosecutor, go ahead and tell me the reasons, and then the prosecutor coming up with reasons for a couple of the strikes, then the trial judge giving a reason that the trial judge has made up for a third strike, and then the trial judge saying, okay, I've heard enough. I'm going to allow these strikes. And I see my time's on my end. I finished answering the question. We've taken you a long time on the other issue. So Mr. Upshaw's attorney was not interrupted. Yes, the trial court interrupted the prosecutor, then gave the opportunity to Mr. Upshaw's attorney to explain why those reasons or non-reasons were a pretext. All he did, all... There were no reasons vis-a-vis two of the jerks. Right, and I believe under Johnson v. California, it was then Mr. Upshaw's burden to say, Your Honor, this was clearly pretext. The prosecutor hasn't even brought forth reasons for these two. And look at all these circumstances, such as the jury veneer is all white. But we don't have that. We don't know if the jury veneer was significantly black. If there was... If the prosecutor did not strike several black jurors, that ultimately sat in the jury. We know none of those circumstances. And the trial court did give Mr. Upshaw's attorney the opportunity to answer, to provide those circumstances. But all he said was, Your Honor, age cannot be a reason. But we know that age can be a reason. The prosecutor can give whatever race-neutral reason. That was just vis-a-vis one juror. Correct. And then the trial court said, Is there anything else? Specifically asking Mr. Upshaw's counsel, Is there anything else to add? And he says, No, Your Honor, there's not. That issue. But then he was not given an opportunity by the court to address anything else. We've got, out of the first eight jurors, there was an attempt to strike six African-Americans. Correct. We have two for which no reason was ever given. We have one for which the trial court interrupted and offered the reason. So I'm at a loss to understand your argument that that satisfies our law. It's, Your Honor, I agree. It was not the correct, correct step-by-step interpretation of Batson. It did not fulfill every requirement of the Batson. However, it did satisfy the purpose of Batson. The purpose is to uncover purposeful discrimination. The trial. Do that if the state didn't, if he did not have an opportunity to explain based on the court's early ruling. It seems to me that Hernandez is a problem for you.  Yes, Your Honor. I do believe Hernandez is not clearly established for the reasons I've set forth in my brief. I acknowledge Lancaster. We disagree with. Yeah, I understand that, Your Honor. Says that the prima facie case becomes moot when you move on, which is a very reasonable interpretation. I agree. So if that's the case, then that's moot. And the only thing this judge ruled on was simply a throw-off comment that effectively said, I don't think you've made your prima facie case. I don't know what's going on here, but we're moving on. I think he was, the trial judge was a little too quick to move on correct. However, he did give Mr. Upshaw's attorney the opportunity to make his case. It's the one, right? Well, I think that, is there anything else referred to his entire argument on the Batson issue? I don't think it referred to. Is there anything else on this particular jury? I think it was, is there anything else you have to add? I'm concerned that in Batson, it is so significant whether there is racial discrimination against jurors that the rules really have to apply. This is not a, I don't understand how we can say it's good enough. Either you met the requirements or you didn't. And here, I don't understand the argument that you met the requirements, particularly as to three named jurors, Wilburn, Smith, and Jones. I, I think again, it's, the burden is ultimately on the criminal defendant in this case, and it never shifts from the criminal defendant. Without showing that the prosecutor exercised purposeful discrimination, all we have here is a numbers game, that six out of the eight strikes were against black potential jurors. It cannot be under Batson that all you have to show is that a certain amount of jurors that were struck were a member of a minority class in order to show purposeful discrimination. There's a reason that the Batson requirements don't look first to the defendant, but look to the prosecutor. And if that step, if the whole analysis and presentation fails at that step, you can't go through the whole Batson, you can't go through the Batson process, particularly when the trial judge doesn't enforce the requirements strictly and follow what the clear law is. To some extent, yes, Your Honor. However, to say that in this case, that he's entitled to relief based on that would, to render nugatory the Johnson v. California case, which said you don't have, the prosecutor doesn't have to give any reasons at all. It doesn't mean that the inquiry ends there. You still go to step three to then put the burden on the criminal defendant. Thank you. We've taken you over your time. We'll let you have your rebuttal because it's been our questioning that's taken you. Thank you, Your Honor. Good morning, Your Honors. May I please support Daniel Scott Harawa on behalf of the appellee, Lafayette Upshaw. Your Honors, I'd like to start with the Batson claim. And I think, Your Honors, pointed out the deficiency here with what happened in the trial court. I think, Judge Strange, as you noted, under this court's case law, step one is moot at this point. So the question is, what happens at step two and step three? The prosecution has the burden of production at step two to produce race, excuse me, race-neutral reasons for all of its strikes. That's what Perkett says. That's what Batson says. That's what Miller-Ell says. And here, the prosecution did not satisfy its burden of production. So then the question is, what happens? The prosecution did give some reasons. The prosecution said that one potential juror was too old and another potential juror was too young. So the whole rest are just right. Three bears. So there were those reasons. And then someone else was convicted of a CCW.  And then, after that, the court says, yes, he's the jury with relatives in prison with respect to somebody else. So those are four. So didn't the prosecution satisfy its burden vis-a-vis those four? Well, challenge me on that statement. Your Honor, the prosecution did produce reasons for three of the jurors. I think the trial court infected the Batson inquiry when it first gave a reason for the fourth juror that the prosecution then adopted. But I think under clearly established Supreme Court case law, the strike of any juror because of race is a constitutional violation. And that's why the burden of production requires the prosecution to provide a race-neutral reason for each of its strikes. And it surprises me a little that the state relies on Johnson v. California to say it didn't have that burden, where if you look at footnote six of Johnson, the Supreme Court says that when the prosecution fails to provide a reason, that itself is an inference of discrimination. And so as the Ninth Circuit said in Paulino, when the prosecution fails to provide race-neutral reasons for its strikes, that most always will satisfy step three because there's nothing to balance at that point. The whole point of step three, as Judge Gibbons alluded to, is to figure out whether the prosecution's answers withstand scrutiny. And when the prosecution doesn't give any answers, there's nothing to really suss out at that point. With respect to at least the two jurors where the prosecution gives no reason, the trial judge gives no reason, there is no reason. I suppose that your opponent is arguing that when the trial judge said anything else, that the defense counsel should have then said something. And your honor, defense counsel did say something. If you look at page 427 to 28 of the record, defense counsel said, your honors, the government hasn't given any reason for Pamela Jones and the government didn't say anything in response. The trial court did not say anything in response. The trial court moved on, as your honors alluded to. And so it's not as if this wasn't even the trial court or the government weren't put on notice about the fact that the government failed to meet its burden of production. Counsel raised it. And so I think the Batson inquiry here is clearly defective. I think I heard my friend admit that the trial court did not conduct the Batson inquiry correctly. And so I think the district court's decision here should be affirmed on the Batson ground. I think that is the cleaner claim here. But I also think the IAC claim is another ground to grant Mr. Upshaw relief. And I'll turn to that unless the court has any further questions on Batson. I think one thing that got a little confused in my friend's opening argument is the idea of what the affidavit work was doing here. And I think the question is, were the facts before the Michigan Court of Appeals enough to determine that counsel had a duty to investigate alibi witnesses that Mr. Upshaw proffered? I think it's clear under this court's case law that the failure to investigate alibi witnesses is deficient performance. And so the question is, were there enough facts in the record to support the fact that counsel's duty was triggered? Here, and I think opposing counsel misses this, Mr. Upshaw submitted two affidavits. The second affidavit explicitly said, I told my counsel about three alibi witnesses, Ms. Holloway, Ms. Green, Ms. Wood, and counsel didn't investigate them. So it's just not true that there wasn't proof before the Michigan Court of Appeals about the alibi witnesses. Was that affidavit, the second one from Mr. Upshaw, was produced to the Michigan Court of Appeals before it made its decision? Yes, Your Honor. And the Michigan Court of Appeals at that point, Mr. Upshaw asked for a remand for a Ginther evidentiary hearing so the court could kind of figure out what was in these affidavits, or kind of what were the alibi witnesses, what they said. And the Michigan Court of Appeals denied the Ginther hearing over one of the judges' dissent. And so I just don't think based on the factual record here that it was, as the district court found here, it was an unreasonable determination of the facts to say that Mr. Upshaw did not present enough evidence sufficient to show that counsel had a duty to investigate alibi witnesses. And I think Ms. Green, I think her letter can only be read as providing an alibi for Mr. Upshaw. Ms. Holloway said explicitly, I am an alibi witness and counsel didn't do anything. In fact, counsel was retained so close to trial, didn't meet with Mr. Upshaw until seven days before trial. So under Michigan law, he couldn't have even noticed alibi witnesses. So I think all that goes to show deficient performance. And I think it was prejudicial. Again, we cite at least eight cases by my count in which this court has granted habeas relief based on the failure to investigate alibi witnesses because at this point, Mr. Upshaw's lawyer really didn't present a defense. Mr. Upshaw's whole defense was that this was a mistaken ID case. I wasn't there. His lawyer only presented the manager who testified that he dropped Mr. Upshaw off a little after 3 a.m. and then nothing else. And so what the prosecutor did effectively was say, that's not a defense. The defendant can't account for where he was at the time of the attempted robbery at the gas station. And as this court said in Stewart, when the prosecutor hammers home the lack of evidence in a case, that's especially probative of prejudice because as Judge Strance noted, this is a one ID witness case that happened after less than two minutes. By all accounts in the evidence, the shooter's face was obscured. Ms. Tina Williams said she could only see, the most she could see, excuse me, was from the nose up, which is still half the face is covered. And she was trying to move a Red Bull cooler. There was a lot going on during the course of this investigation. And so in an eyewitness case, of course, a reasonable juror could have credited the alibi witness who said, he wasn't there. He was with me. What's your best case that you think is the most similar case to this factual scene? So, Your Honor, I believe we rely on Bigelow in our brief, which I think is similar with a one eyewitness ID. I think the district court relied on Klinkscale, which is also a one eyewitness ID. Avery, which we also cite in our case, is similar, I think, with a one eyewitness ID. And so I don't think this fact pattern is all that unusual. And one quick point about prejudice, which I think is really important here, is that the district court heard Ms. Holloway testify about the alibi witness. And she said, I find her to be very credible. Now, that raises the question, was the district court in holding an evidentiary hearing? Arguably, Cullen versus Penholster says that it was wrong for the district court to have an evidentiary hearing. That under Cullen versus Penholster and the Anti-Terrorism and Effective Death Penalty Act, the federal courts cannot hold evidentiary hearings under such circumstances. How do you respond to that? Sure. So, Your Honor, I think as this court said in Harris, once D-1 or D-2 is satisfied, a federal court is allowed to hold an evidentiary hearing before ultimately deciding to grant the writ. And in fact, a few years ago in Clark, this court reversed the grant of a writ based on affidavits alone saying, well, you need to test that evidence to make sure the petitioner met his burden. But the district court also covered its bases here and said, I would have granted the writ based on the affidavits alone. I wanted to hold an evidentiary hearing to ensure the witnesses were credible. I'm sure the state would have objected and said, we should have had an evidentiary hearing if she didn't. And she listened to their testimony. She heard what they had to say. And she said she found that I find these witnesses to be credible. So again, I think that reinforces the prejudiced point that had Ms. Holloway been called to testify at trial, a reasonable juror could have found her credible and thus the outcome of trial could have been different. And so, Your Honors, I think under either claim, Mr. Upshaw is entitled to relief. Obviously, you only have to grant, uphold one claim for him to get relief. And unless there are no further questions. I'm curious. I understand that one of the three alibi witnesses has died. How does that affect things? Your Honor, I don't think it affects things for this reason. So first, the IAC claim is based on the fact of was counsel required to investigate? And I think that is clearly satisfied here. And I think based on Ms. Holloway alone, the district court found credible. I mean, at that point, the grandmother and Ms. Holloway would have been accumulative. They both would have testified to Mr. Upshaw being at home at the same time. While I think a jury would have found two witnesses better than one, the district court here said that one witness was enough for me to find that there's a reasonable probability that the outcome at trial could have been different. Thank you. Your Honors, I'll be very brief with my rebuttal. I just wanted to point out a couple things. Opposing counsel mentioned the second affidavit from Mr. Upshaw that was presented on appeal. I just wanted to point out at that point, Mr. Upshaw has already provided an affidavit where he's basically essentially said the opposite that his attorney didn't have the correct information or all the information necessary. He also in at the trial court level when he asked for an adjournment, mentioned several reasons why he wanted adjournment, this, this, this, and this. He never once mentioned that there's an alibi that needed to be investigated. Didn't he offer an explanation for why he did not mention the alibi witness before the court? Not on the state court record, no, Your Honor. In the record before this court, didn't he say that he did not want to speak about alibi witnesses because he did not want to give the state knowledge about what his defense was? Correct, but this, this court has to evaluate the claim based on the state court record to show that there was unreasonable application of clearly established federal law. Or fact, or fact. Correct, correct, yes. Problem here, I'm looking at the, the information that he sought to put in that he was, that his boss dropped him off in a different color pair of shoes at his home, that two people saw him between 3 20 and 3 30 a.m. And then the court decided that he made it back to the gas station, which was three and a half miles away without a vehicle at 3 35. Well, Your Honor. Don't you get to, doesn't the court get to look at the reality of time? Sure, Your Honor. I would point out that there's nothing in the record that shows that he arrived at the gas station on foot. He, that, that the witness didn't see a vehicle does not mean that he didn't have a vehicle, that there wasn't, they didn't come to the back of the, the gas station on a vehicle and then sneak around front. There's nothing in the record that says he didn't have a vehicle. Well, no, he said he didn't have a vehicle. Not in the state court. That's why his boss was driving him home from work because he didn't have a vehicle to drive to and from work. But that doesn't mean that Mr. Walker, for example, didn't pick him up in a vehicle. There's nothing in the state court record that says that he didn't drive to the scene, that there was no way he, that there was a vehicle at the scene. A state court can certainly look at. If he, if his position is he wasn't at the scene, it's a little hard to see why he'd be out searching for people who said he didn't have a vehicle at the, to drive to the scene. I mean, you know. I guess I'm confused at that. I'm saying that's kind of an ancillary point. If you're the defendant and your position is you weren't there at all and you've been misidentified. Yes, Your Honor. However, I think this is, again, ADPA applies here. It's reasonable for the court, and I see my time is up. Can I finish my point? Yes. The Court of Appeals to look at this affidavit and even if we get to the substance of the affidavit to look at that and say, well, she, Grammler doesn't even provide technically an affidavit, an alibi for the exact time. Certainly it's reasonable. Well, it's 15. I'm struggling with the reasonableness of the interpretation of the law. You've got two people who said he was here till 3.30. He says he doesn't have a car and he has to be three and a half miles away by 3.35. Seems to me that logic and common sense would tell you that that's not viable. This court may think so. I think it's reasonable for a state court to look at those exact statements that the alibi witness said and said he was being blessed out by me between 3.20 and 3.30 and could say, well, maybe she meant that is sometime between 3.20 and 3.30. He was there. It could have been 3.20 and then he got a new car, got picked up, changed his shoes, went to the gas station. It's only three miles away in 15 minutes. That's certainly a reasonable interpretation. I would ask that this court reverse. Thank you very much. Thank you both for your argument. And the case will be submitted. And Mr. Harabaugh, I see that you are appointed pursuant to the Criminal Justice Act and we want to thank you for your representation of your client in the service of justice. Thank you both for your argument. Case will be submitted.